

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAR 2 4 2010

JUDGE AMY ST. EVE
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 122-8 |
| vs. | ) | |
| | ) | Judge Amy J. St. Eve |
| MELVIN HOLMES | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant MELVIN HOLMES, and his attorney, DOUG RATHE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding information in this case charges defendant with two counts of having knowingly and intentionally using a communication facility, namely, a telephone, in committing and in causing and facilitating the commission of a felony violation of Title 21, United States Code, Section 846, namely, conspiracy to possess with the intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 843(b).

3.     Defendant has read the charges against him contained in the superseding information, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5.      The superseding information charges defendant with two counts of knowingly
and intentionally using a communication facility, namely, a telephone, in committing and in
causing and facilitating the commission of a felony violation of Title 21, United States Code,
Section 846, namely, conspiracy to possess with the intent to distribute and to distribute
controlled substances, in violation of Title 21, United States Code, Section 843(b).

## Factual Basis

6.      Defendant will plead guilty to Counts One and Two because he is in fact guilty
of the charges contained in the superseding information. In pleading guilty, defendant admits
the following facts and that those facts establish his guilt beyond a reasonable doubt and
constitute relevant conduct under Guideline §1B1.3:

On or about April 28, 2007, at approximately 1:55 p.m. and May 7, 2007, at
approximately 6:41 p.m., at Joliet, in the Northern District of Illinois, Eastern Division,
defendant MELVIN HOLMES (hereinafter "HOLMES"), knowingly and intentionally used
a communication facility, namely, a telephone, in committing and in causing and facilitating
the commission of a felony violation of Title 21, United States Code, Section 846, namely,
conspiracy to possess with intent to distribute and to distribute controlled substances, in
violation of Title 21, United States Code, Section 843(b).

More specifically, beginning no later than in or around February 2007, and continuing
until at least on or about February 12, 2008, defendant MELVIN HOLMES (hereinafter

2

"HOLMES") conspired with Barry Ware, Bobby Mitchell, LaQuinta Moffett, Linnea Massey, and others known and unknown, to knowingly and intentionally to possess with intent to distribute and to distribute a controlled substance, namely in excess of 50 grams of cocaine base in the form of crack cocaine ("crack cocaine"), in violation of Title 21, United States Code, Section 846.

More specifically, between in or around February 2007 and February 12, 2008, HOLMES served as a courier for the Barry Ware drug trafficking operation (hereinafter "the Ware DTO"). In that role, HOLMES distributed wholesale quantities of crack cocaine to and collected crack cocaine proceeds from customers of the Ware DTO, including Bobby Mitchell. HOLMES received the wholesale quantities of crack cocaine that he distributed to customers of the Ware DTO from Barry Ware or other couriers for the Ware DTO, including LaQuinta Moffett and Linnea Massey. HOLMES gave the crack cocaine proceeds he picked up from customers of the Ware DTO to Barry Ware or other couriers for the Ware DTO, including LaQuinta Moffett and Linnea Massey.

For example, on or about April 21, 2007, Bobby Mitchell delivered \$2,200 to HOLMES at HOLMES' residence in Joliet, Illinois (hereinafter "HOLMES' residence"). The money Bobby Mitchell delivered to HOLMES constituted the proceeds from Bobby Mitchell's sale of at least 2 1/4 ounces (63 grams) of crack cocaine.

As charged in Count One, on or about April 28, 2007, at approximately 1:55 p.m., Barry Ware called HOLMES on the telephone and asked if "Bobby" Mitchell had delivered

3

crack cocaine proceeds to HOLMES yet.  HOLMES told Barry Ware that he was going to
contact Bobby Mitchell right away.  Later that same night, Bobby Mitchell delivered another
$2,200 to HOLMES at HOLMES' residence.  The money Bobby Mitchell delivered to
HOLMES constituted the proceeds from Bobby Mitchell's sale of at least 2 1/4 ounces (63
grams) of crack cocaine.     On or about May 7, 2007, Barry Ware delivered at least 2 1/4
ounces (63 grams) of crack cocaine to HOLMES at HOLMES' residence in Joliet.  Barry
Ware explained to HOLMES that he should distribute the crack cocaine to Bobby Mitchell.
As charged in Count Two, later that same day, at approximately 6:41 p.m., Barry Ware called
HOLMES on the telephone and told him that "Bobby" Mitchell was "out front" of
HOLMES' residence.  HOLMES went outside and distributed the crack cocaine to Bobby
Mitchell.

On or about May 11, 2007, Barry Ware delivered at least 2 1/4 ounces (63 grams) of
crack cocaine to HOLMES at HOLMES' residence.  That evening, HOLMES distributed the
crack cocaine to Bobby Mitchell at HOLMES' residence.

On or about June 5, 2007, at approximately 10:21 a.m., HOLMES called Barry Ware
and spoke to him about the quality of the crack cocaine Barry Ware had given to HOLMES
to distribute.  HOLMES complained that Barry Ware had added too many adulterants to the
crack cocaine, thereby making it more difficult to sell.  Barry Ware told HOLMES that the
crack cocaine had not mixed up well and directed HOLMES "to just get rid of it," meaning
that HOLMES should distribute the crack cocaine.  HOLMES did so.

4

The amount of controlled substances involved in the conspiracy, including the cocaine base in the form of crack cocaine with which HOLMES was personally involved and also that which was reasonably foreseeable to HOLMES, was at least 150 grams but less than 500 grams of cocaine base in the form of crack cocaine.

## Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Counts One and Two each carry a   maximum sentence of 4 years' imprisonment and a maximum fine of $250,000.  Defendant further understands that with respect to Counts One and Two the judge also may impose a term of supervised release of not more than one year.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

c.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 8 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200.

5

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2009 Guidelines Manual.

      b.     **Offense Level Calculations.**

          i.     The guideline applicable to the offenses of conviction is Guideline §2D1.6 and the base offense level is the offense level applicable to the underlying offense (conspiracy to possess with intent to distribute and to distribute cocaine).

          ii.     Pursuant to Guideline § 3D1.2(d), the offenses of conviction are grouped together in a single group.  The base offense level for the underlying offense is 32, pursuant to Guideline §§2D1.1(a)(3) and (c)(4), because the amount of controlled substances involved in the underlying offense for which defendant is accountable is at least 150 grams but less than 500 grams of cocaine base in the form of crack cocaine.

6

iii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iv.     In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 5 and defendant's criminal history category is III:

i.     On or about July 11, 1983, defendant was convicted in the Circuit Court of Will County of burglary and sentenced to 2 years' probation.  Pursuant to

7

Guideline §4A1.1 n.3, defendant receives no points for this conviction because the sentence was imposed more than ten years prior to defendant's commencement of the instant offense.

ii.    On or about February 27, 1984, defendant was convicted in the Circuit Court of Will County of burglary and sentenced to 5 months' probation. Pursuant to Guideline §4A1.1 n.3, defendant receives no points for this conviction because the sentence was imposed more than ten years prior to defendant's commencement of the instant offense.

iii.   On or about February 18, 1993, defendant was convicted in the Circuit Court of Will County of theft/deception and sentenced to 1 year supervision. Pursuant to Guideline §4A1.1 n.3, defendant receives no points for this conviction because the sentence was imposed more than ten years prior to defendant's commencement of the instant offense.

iv.    On or about December 29, 1997, defendant was convicted of telephone harassment in the Circuit Court of Will County and sentenced to 18 days' imprisonment and 12 months' probation. Pursuant to Guideline §4A1.1(c), defendant receives one point for this conviction.

v.     On or about August 25, 2004, defendant was convicted of violating an order of protection in the Circuit Court of Will County and sentenced to 44 days' imprisonment and a term of conditional discharge. On or about December 20, 2005, defendant's conditional discharge was revoked and was sentenced to 66 days' imprisonment. Pursuant to Guideline §4A1.1(b), defendant receives two points for this conviction.

8

vi.     Pursuant to Guideline §4A1.1(c), defendant receives two points because he committed the instant offense less than two years after release from imprisonment for the conviction listed in paragraph 9cv.

d.     **Anticipated Advisory Sentencing Guidelines Range.**   Therefore, based on the facts now known to the government, the anticipated offense level is 29, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory Sentencing Guidelines range of 108 to 135 months' imprisonment, in addition to any supervised release and fine the Court may impose.   However, the sentence may not exceed the statutorily-authorized maximum of 96 months' imprisonment.

e.     Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely.  Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.      Each party is free to recommend whatever sentence it deems appropriate. If the Court determines that the sentence should be reduced in light of the disparity between the offense levels for crack and powder cocaine, the government will not object to a reasonable reduction on that basis. The government will, however, object to any sentence below the guidelines range that would apply if the crack cocaine quantity in this case were treated as equal to powder cocaine.

11.      It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

10

12.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

13.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 122-8.

14.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

15.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve

11

or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

      b.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after

12

hearing all the evidence, and considering each count separately, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.     **Waiver of appellate and collateral rights**.     Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section

13

1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

d.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically

14

preserved above.   Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

16.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

17.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States

15

Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

19.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

20.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

21.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

16

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

22.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

23.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

24.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.   Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____3/24/10_____

_____
PATRICK J. FITZGERALD
United States Attorney

_____
MELVIN HOLMES
Defendant

_____
TERRA L. BROWN
Assistant U.S. Attorney

_____
DOUG RATHE
Attorney for Defendant

18